STATE OF WEST VIRGINIA

*v.*

DALLAS KENT FRISBY

(No. 13833)

Decided June 27, 1978.

*Leonard Z. Alpert* for appellant.

*Chauncey H. Browning*, Attorney General, *Edward W. Gardner*, Assistant Attorney General, for the State.

NEELY, JUSTICE:

This appeal arises from the conviction of the appellant, Dallas Kent Frisby, for possession of a controlled substance, namely marijuana, with intent to deliver. The appellant assigns three errors: (1) the statute under which the conviction was obtained, *W.Va. Code*, 60A-4-401(a) [1971] is unconstitutional because it does not set forth definite standards for proving "intent to deliver;" (2) exhibits were introduced which tended to prove another, unrelated crime and such exhibits were not on the State's bill of particulars; and (3) the initial detention of the appellant in a motor vehicle was illegal and, therefore, all evidence found as a result of such detention was tainted. We find no merit to the appellant's arguments and affirm the judgment of conviction entered by the Circuit Court of Hancock County upon the jury verdict.

The appellant and a male companion were driving a van on the public streets of Weirton at about 2:30 a.m. on September 7, 1975. A city police officer observed a license plate on the van which had a number, over which appeared the letters BLMO. The officer testified that he had never seen a similar plate, and that the plate appeared to have no state identification. The officer stopped the van and during the course of the stop the officer's companion, a reserve policeman, noticed a rifle in plain view inside the vehicle and smelled the odor of marijuana. The appellant was taken into custody, a warrant was obtained to search the van, and the police discovered about 175 pounds of marijuana, two weapons, a set of scales suitable for weighing marijuana, and various sizes of bags.

I

At trial all of this evidence was introduced and a jury convicted the appellant of possession of a controlled substance with intent to deliver. The provision of the law making such possession a crime, *W.Va. Code*, 60A-401(a) [1971] says:

Except as authorized by this chapter, it is unlawful for any person to manufacture, deliver,

or possess with intent to manufacture or deliver,
a controlled substance.

We find no constitutional infirmity in this section as it
establishes a jury question on the element of intent. All
common law crimes require a *mens rea*, and what a
person intended is always a question for jury determina-
tion under all the facts and circumstances. There is no
reason to treat a statutory crime any differently. In this
case the appellant had far more marijuana than an av-
erage person can consume in the course of several years,
and had a scale and bags which the jury could infer
were for the purpose of distributing the drug. Obviously
quantity, standing alone, is evidence of intent to deliver.

*W.Va. Code*, 60A-4-401(c) [1971], which requires misde-
meanor treatment for first offenders guilty of possessing
less than 15 grams of marijuana, does not discriminate
invidiously against second offenders or possessors of
greater amounts; it merely establishes what amounts to
a presumption of law that first offense possession of less
than 15 grams is *not* with intent to deliver. That statute
does not create a presumption that possession of *more*
than 15 *is* with intent to deliver; the State must still, in
each and every case, prove such intent beyond a reason-
able doubt. Thus there is no violation of *State v. Pendry*,
W. Va., 227 S.E.2d 210 (1976) with regard to presump-
tions, as the 15 grams presumption is *in favor* of a de-
fendant. Furthermore the 15 gram exception does not
discriminate *invidiously*, as it effects the legitimate pub-
lic policy of avoiding possible felony treatment for what
is obviously a victimless crime, namely a lapse of good
sense in the casual use of a dangerous drug.

## II

The weapons found in the van were introduced into
evidence at trial over the appellant's objection that the
evidence was "irrelevant." Ten pages later in the tran-
script the appellant's counsel moved for a mistrial on
the grounds that the evidence was not listed in the
State's bill of particulars, and upon the further ground
that the weapons were evidence of the commission of an

unrelated crime, namely a firearms violation. We find that any error concerning evidence of another crime was, under *State v. Thomas*, W.Va., 203 S.E.2d 445 (1974), harmless beyond a reasonable doubt in light of the overwhelming weight of the other evidence, and that the objection was waived by counsel's failure to make a timely assignment of reasons when specifically asked by the trial judge. Similarly, the objection that the weapons were not listed in the bill of particulars was both harmless and waived.

## III

Finally we come to the most troublesome of the appellant's assignments, namely the tenuous legality of the police's initial detention of the appellant. We recognize that all states have motor vehicle laws requiring the licensing of drivers and the registration of motor vehicles, examples of which in West Virginia are *W.Va. Code*, 17A-3-13 [1951], 17A-9-2 [1974], 17B-2-9 [1951], and 17B-2-1 [1972]; nonetheless, enforcement of these simple regulatory laws cannot be used as an excuse to harass citizens when there is no probable cause to suspect a violation.

The weight of authority is that without violating the Fourth Amendment to the *Constitution of the United States* or *W. Va. Constitution*, art. 3, § 6, motorists may be stopped for no other reason than examination of licenses and registrations when such examinations are done on a random basis pursuant to a preconceived plan, such as the stopping of every car at a check point, the examination of every car on a given day with a particular letter or number group in the license, or any other non-discriminatory procedure. *Commonwealth v. Mitchell*, 355 S.W.2d 686 (Ky. Ct. App. 1962). However, the "routine" check cannot be used to make legitimate otherwise unwarranted police intrusion. *State v. Johnson*, 26 Or. App. 599, 554 P.2d 194 (1976). The essence of civil liberties is protection from power arbitrarily exercised by duly constituted authority. Thus regardless of length of hair, color of skin, political convictions, eccentricity of life-style, or any of the other standard grounds which

inspire people to make the lives of others miserable, a person in West Virginia is free to go about his business at all hours of the day and night unencumbered by the need to relate his life's story to every passing, under-employed agent of the State.

Nonetheless, in the case before us we find that the police had reasonable grounds to believe that further investigation was warranted. *Terry v. Ohio*, 392 U.S. 1 (1968). They observed a license plate which appeared to have no state designation on it. In fact, it later appeared before trial that the letters BLMO stood for "beyond the limits of Missouri," apparently indicating a special category of vehicle registration for persons who register their vehicles in Missouri but use them elsewhere. Among other things, we question whether a West Virginia resident would be entitled to use a vehicle titled in his name and so registered in Missouri, under *W.Va. Code*, 17A-3-2 [1967].

While a police officer's casual observation of an out-of-state license plate would not by itself warrant further investigation, the observation of a plate which does not appear to have come from any other state does. Under these circumstances further investigation is not an onerous burden on the motorist, and further investigation is but a reasonable exercise of state power to prevent the use of fraudulent license plates.

A police officer might be charged with knowledge of all standard license plates issued by the fifty states, but he is not charged with knowledge of "limited edition" plates such as the one in this case. While BLMO is a perfectly understandable abbreviation to someone conversant with the somewhat eccentric Missouri registration procedures, it is not even arguably a common license plate designation and it completely obscures the state of origin by the inclusion of two extraneous prefix letters. Accordingly, we find that the detention of the appellant for the purpose of investigating his registration and license was reasonable and that the evidence seized as a

direct result of such investigation was not tainted. *See State v. Smith,* W.Va., 212 S.E.2d 759 (1975). Therefore, for the reasons set forth above, the judgment of the Circuit Court of Hancock County is affirmed.

*Affirmed.*